## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISON

| | | |
|---|---|---|
| **REPIFI VENDOR LOGISTICS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-CV-00448** |
| | § | |
| **INTELLICENTRICS, INC. and** | § | **JURY TRIAL DEMANDED** |
| **INTELLICENTRICS GLOBAL** | § | |
| **HOLDINGS, LTD.,** | § | |
| | § | |
| **Defendants.** | § | |

## INTELLICENTRICS, INC.'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

III.  ARGUMENT ...................................................................................................... 5

      A.    The '268 Patent is invalid under 35 U.S.C. § 101. ................................ 5

           1.    The Alice § 101 inquiry. ............................................................ 5

           2.    Step One: Representative Claim 1 of the '268 Patent is directed to an abstract idea. ..................................................................... 8

           3.    Step Two: Representative Claim 1 of the '268 Patent contains no inventive concept. .................................................................. 12

           4.    The remaining claims in the Plaintiff's patent are also abstract and do not contain an inventive concept ...................................... 15

IV.  CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)..................................................................................6, 12

*Alice Corp. Pty. v. CLS Bank Int'l,*
573 U.S. 208 (2014).........................................................................................1, 5, 7, 8

*Bilski v. Kappos,*
561 U.S. 593 (2010)...................................................................................................5

*British Telecommunications PLC v. IAC/Interactive Corp.,*
813 Fed.Appx. 584 (Fed. Cir. 2020)...................................................................6, 7, 8, 9

*Chamberlain Group, Inc. v. Techtronic Industries,*
935 F.3d 1341 (Fed. Cir. 2019)..........................................................................6, 7, 8, 9

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019)...........................................................................5, 13, 15

*Consumer 2.0 Inc. v. Tenant Turner, Inc.,*
343 F.Supp.3d 581 (E.D.Va. 2018) .........................................................................9, 10

*Consumer 2.0 Inc. v. Tenant Turner, Inc.,*
796 Fed.Appx. 752 (Fed. Cir. 2020)........................................................................9, 10

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980)...................................................................................................5

*Electric Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016).....................................................................11, 12, 13, 15

*Electronic Communication Technologies, LLC v. ShoppersChoice.com, LLC,*
958 F.3d 1178 (Fed. Cir. 2020)........................................................................1, 5, 11, 12

*Enfish, LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016).....................................................................................7

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
792 F.3d 1363 (Fed. Cir. 2015).....................................................................................6

*Intellectual Ventures I LLC v. Erie Indem. Co.,*
850 F.3d 1315 (Fed. Cir. 2017).................................................................................5, 7

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F.Supp. 3d 829 (E.D. Tex. 2014) ................................................................8

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ........................................................................6

*Two-Way Media v. Comcast Cable Commc'ns*,
   874 F.3d 1329 (Fed. Cir. 2017) ......................................................................8

**Statutes**

35 U.S.C. § 101 .................................................................................... *passim*

**Other Authorities**

FED. R. CIV. P. 12(b)(6) .....................................................................................1

iii

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant IntelliCentrics, Inc. ("IntelliCentrics" or "Defendant") moves to dismiss Plaintiff Repifi Vendor Logistics, Inc.'s ("Repifi" or "Plaintiff") Complaint for Patent Infringement (the "Complaint") asserting infringement of U.S. Patent No. 10,304,268 (the "'268 Patent") [ECF No. 1].

## I.       INTRODUCTION

In *Alice v. Corp. Pty. v. CLS Bank Int'l,* the Supreme Court reaffirmed that abstract ideas are not eligible for patenting under 35 U.S.C. § 101. 573 U.S. 208 (2014). Here, the '268 Patent's specification effectively concedes that its focus is an abstract idea, stating: **"The present invention is *directed to* a method for credentialing visitors to an access-controlled environment by an access administrator."** '268 Patent at 1:55-58 (emphasis added). The method steps recited in Claim 1 for "credentialing visitors" are not technological, but steps that have been commonly used by people and businesses to control visitor access "for several decades, if not longer." *Electronic Communication Technologies, LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1180 (Fed. Cir. 2020). The '268 Patent's claimed method steps include:

(i)      "providing [a] badge;"

(ii)     "enrolling a visitor … by entering visitor information based on requirements of the administrator;"

(iii)    "requesting, by the visitor, at least one location for which access is desired and submitting the at least one location to the administrator;"

(v)      "approving, by the administrator, the request for access at the at least one location;"

(vi)     "displaying on the badge display indicia showing access by the visitor is authorized to the location during the specific time interval;"

(vii)    "checking out of the system when the visitor departs the pre-defined area;"

(viii)   recording … "the check-in data" and "the check-out data of the visitor;" and

(ix)   "removing from badge display, the indicia showing access by the visitor is authorized."

'268 Patent at Claim 1. Although the '268 Patent utilizes a smart-phone app and a phone's pre-existing GPS functionality to execute these steps, that does not make the claims patent eligible. Boiled down to its core focus, the '268 Patent claims conventional human activity similar to other business practices that both the Supreme Court and the Federal Circuit have repeatedly held ineligible for patent protection. And critically, the claims do not recite any technological improvement or an inventive concept, as the claims merely apply conventional technology for its intended purposes. Because the '268 Patent tries to patent an abstract idea and nothing more that transforms this abstract idea into a patent eligible concept, Plaintiff has failed to state a claim upon which relief can be granted, and the Court should dismiss Plaintiff's Complaint with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Complaint asserts infringement of the '268 Patent, titled "Visitor credentialing system for an access-controlled environment." See ECF No. 1, 1-1 (the '268 Patent). Plaintiff's Complaint states that the claimed inventions relate to "a method for credentialing visitors to an access-controlled environment by an access administrator for use in healthcare facilities." *See*, *e.g.*, ECF No. 1 at ¶ 7. The '268 Patent similarly explains that "[t]he present invention is directed to a method for credentialing visitors to an access-controlled environment by an access administrator." *See, e.g.*, '268 Patent at 1:56-58, 6:54-56 (Claim 1).

Claim 1 is the sole independent claim of the '268 Patent, and states:

A   for credentialing visitors to an access-controlled environment by an access administrator, comprising the steps of:

(a) providing a smart-phone based credentialing platform having global positioning system (GPS) capability;

2

(b) providing an electronic badge having a display having electronically controlled and changeable indicia thereon, the badge adapted communicate with a smart-phone;

(c) enrolling a visitor into the credentialing platform by entering visitor information based on requirements of the administrator;

(d) approving, by the administrator, that the requirements of the step of enrolling are met;

(e) requesting, by the visitor, at least one location for which access is desired and submitting the at least one location to the administrator via the credentialing platform, said location having a pre-defined area;

(f) approving, by the administrator, the request for access at the at least one location;

(g) checking in on the smart-phone, by the visitor, via the credentialing platform, to establish check-in data including check-in time and date by the visitor, wherein the check-in data is recorded by the credentialing platform;

(h) communicating between the smart-phone and the electronic badge, indicia data for forming a display image on the display on the electronic badge;

(i) displaying on the badge display indicia showing access by the visitor is authorized to the location during the specific time interval;

(j) recording, by the credentialing platform, geo-location data of the visitor during the visitor's presence in the pre-defined area;

(k) checking out of the system when the visitor departs the pre-defined area of the at least one location, establishing check-out data, including check-out time and date and geo-location;

(l) recording, by the credentialing platform, the check-in data, the geo-location data and the check-out data of the visitor; and

(m) removing from the badge display, the indicia showing access by the visitor is authorized.

Claim 1 describes a method of credentialing visitors by providing credentialing software and an electronic badge with a changeable display that can communicate with a phone. The method enrolls the visitor in the credentialing platform and coordinates communications with site

personnel for approval. The method includes a visitor who requests and receives approval to visit a particular location, checks in at the location, updates the badge's display to indicate that the visitor is authorized to be in that location, records the date, time, and location of the visitor at various times, and checks out the visitor when he departs the location. After checking out, the electronic badge's display of authorization is removed.

At base, the '268 Patent attempts to monopolize conventional steps that any visitor might need to follow to gain access to any controlled location, except using a smart-phone and an electronic badge. The specification admits that its central visitor credentialing steps are commonplace, stating:

- "[i]t is a common practice to issue identification badges to employees at facilities such as hospital or other healthcare facilities, office buildings, factories and the like." '268 Patent at 1:11-13;

- "[i]f a manned station is used, a visitor is typically received and processed by a receptionist that greets the visitors and provides him or her with a temporary badge. The receptionist typically queries the visitor about the purpose of their visit, examines and validates the visitor's credentials to establish identity and other required documents for entry, establishes the visitor's status and decides to allow or disallow the visit." '268 Patent at 1:22-29;

- It is "beneficial to have a badge and visitor access system that is smart phone application based, where any documentation required for the visit is entered through the smart phone application (and periodically updated if necessary) at an initial system enrollment, and where more limited information is required prior to a visit to the facility, such that no receptionist performing such functions is required." '268 Patent at 1:37-43;

- There are "[c]urrently available display badges," including "a battery-less smart card … having a black and white 2.9 inch e-Paper rewritable display," '268 Patent at 5:56-67, that "communicates with a smart phone [] operated by individual users." '268 Patent at 4:6-8; and

- The method will work with "GPS functionality already present in substantially all smart phones." '268 Patent at 3:65-4:2; 4:39-42 ("either Apple, Inc. iOS based, or Android based" smart phones).

4

According to Plaintiff's Complaint, the '268 Patent's "features provide an enhanced visitor experience by mitigating that visitor's need to locate and use a physical kiosk within a facility, which is inconvenient and time consuming," ECF No. 1 at ¶¶ 15, 21, thus "saving the expense of establishing and maintaining physical kiosks." ECF No. 1 at ¶ 16. Plaintiff alleges the benefits of the claimed systems "are in contrast to traditional, physical methods for checking staff, employees and visitors in and out using physical healthcare facility kiosks and personnel." ECF No. 1 at ¶ 16.

### III.   ARGUMENT

**A.   The '268 Patent is invalid under 35 U.S.C. § 101.**

**1.   The *Alice* § 101 inquiry.**

The Supreme Court has set forth a two-part inquiry for deciding whether a patent claims an unpatentable abstract idea. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). First, the court must determine whether the claim is directed to a patent-ineligible concept, *e.g.*, "laws of nature, physical phenomena and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). Under this first step, courts evaluate "the focus of the claimed advance … to determine if the claim's 'character as a whole' is directed to" excluded subject matter. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017). "[T]he specification [is] helpful in illuminating what a claim is directed to." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

The Federal Circuit has found that claims directed to long-standing commercial practices and activities routinely carried out by humans do not pass step one of the two-part § 101 test. *See Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (concluding claims drawn to "the basic concept of hedging" were directed to an abstract idea because "[h]edging is a fundamental economic practice long prevalent in our system of commerce")*; see also ShoppersChoice.com, LLC*, 958 F.3d at 1181

5

("providing advance notification of the pickup or delivery of a mobile thing" amounts to nothing more than the fundamental business practice … "business practices designed to advise customers of the status of delivery of their goods have existed at least for several decades"); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("[W]e have applied the 'abstract idea' exception to encompass inventions pertaining to methods of organizing human activity.").

As further relevant in this case, the Federal Circuit has routinely found claims that focus on tailoring information to a user's characteristics such as location or the time of day to be abstract. *See Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264-65 (Fed. Cir. 2016) (claims directed to sending content based on location were directed to an abstract idea); *Intellectual Ventures I LLC* v. *Capital One Bank (USA)*, 792 F.3d 1363,1369 (Fed. Cir. 2015) (claims related to tailoring advertisements according to the time of day were directed to an abstract idea because that practice had been "long practiced in our society"); *see British Telecommunications PLC v. IAC/Interactive Corp.*, 813 Fed.Appx. 584 (Fed. Cir. 2020) (claims focusing on providing content or information based on a user's location are ineligible for patent protection).

It is well-established that even where a patent uses computers or other conventional technology to implement an abstract idea, that does not make an abstract idea eligible for patenting. Thus, when the patent's focus centers on employing general purpose computers or devices for their previously-intended purposes, courts generally find the claims abstract at step one. For example, in *Chamberlain Group*, to determine the focus of the claim at issue, the Federal Circuit disregarded the "off-the-shelf" components that distinguished the claimed invention from then-existing systems. *See Chamberlain Group, Inc. v. Techtronic Industries*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("The only described difference between the prior art … and the claimed … system is that

the status information about the system is communicated wirelessly, in order to overcome certain undesirable disadvantages of systems using physical signal paths—additional cost, exposed wiring, and increased installation time."). In concluding that the claims-at-issue were directed at the wireless communication of information, the court noted that even though the claims recited physical systems, such systems merely used "off-the-shelf technology for its intended purpose" without providing an improvement in the physical technology being used. *See id.* at 1348. Similarly, in *British Telecommunications,* the Federal Circuit found claims tailoring the provision of information to a user's characteristics, such as location, using a generic "telecommunications system" and "terminal," were abstract at step one because they were not directed to an improvement in how a computer or communications network functions.  Instead, the claims merely use computers as tools to implement an independently abstract idea: "providing lists of location-specific information sources to users based on their location." *See British Telecommunications*, 813 Fed.Appx. at 587. To determine whether claims are directed to unpatentable abstract ideas, courts also have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

If the claim is directed to excluded subject matter, courts proceed to step two to "look with more specificity at what the claim elements add, in order to determine whether they identify an 'inventive concept' in the application of the ineligible subject matter to which the claim is directed." *Intellectual Ventures*, 850 F.3d at 1338 (quoting *Affinity Labs*, 838 F.3d at 1257). The second step of the *Alice* test requires courts to determine whether the claims at issue contain an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept]

itself.'" *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 73). "[T]he relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea." *Id.* at 225. Claims that merely invoke well-understood, routine, conventional components and activity to apply an abstract idea fail at step two. *See id.* at 225-26. Patents that "simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of those steps" are also ineligible and invalid under § 101. *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F.Supp. 3d 829, 845 (E.D. Tex. 2014) (Bryson, J.). Simply claiming a result does not disclose the specific inventive concept required for patent eligibility under § 101. *See Two-Way Media v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claims that are "directed to a result or effect that itself is the abstract idea and merely invoke[] generic processes and machinery" are ineligible under § 101).

> **2.  Step One: Representative Claim 1 of the '268 Patent is directed to an abstract idea.**

Claim 1 recites how a computer or mobile device can be used to carry out the abstract idea of conducting a basic visitor credentialing task. Although Claim 1 of the '268 Patent recites "a smart-phone based credentialing platform" and "an electronic badge," like the components in *Chamberlain* and *British Telecommunications*, the '268 Patent does not describe any technological improvements in computer or mobile equipment technology. Indeed, in discussing the only required "technology," the specification explains that there are "[c]urrently available display badges" that may be employed for the claims, and that the method uses "GPS functionality already present in substantially all smart phones." '268 Patent at 3:65-4:2; 4:39-42 ("either Apple, Inc. iOS based, or Android based" smart-phones); 5:56-67.

Despite use of these off-the-shelf components, as in *Chamberlain* and *British Telecommunications*, the essential focus of Claim 1 is a "method" for credentialing visitors to an

8

access-controlled environment by an access administrator. As enumerated above, the claims recite fundamental steps of almost any secured-access method, like "providing a badge," "enrolling a visitor," "requesting, by the visitor, at least one location for which access is desired," "approving … the request for access," and "recording" check-in and check-out data like time, date and location. *See* '268 Patent at Claim 1. Similar to the claims in *Chamberlain* and *British Telecommunications*, which were directed to wirelessly communicating status and location information within a system, the '268 Patent is supposed to enhance a visitor's experience by mitigating that visitor's need to spend time checking in with a hospital employee or having to locate and use a physical kiosk within a facility, which is inconvenient and time consuming. *See* '268 Patent at 1:37-50. Plaintiff's Complaint confirms this focus of the '268 Patent, accusing IntelliCentrics of making, using, offering for sale, and/or selling access and credentialing systems to avoid requiring physical kiosks or personnel to check in visitors. *See* ECF No. 1 at ¶ 70.

Like the claims in *Chamberlain* and *British Telecommunications*, the claims in the '268 Patent do not focus on a specific means or method to improve computer, mobile device, or telecommunications technologies recited. Instead, they focus on implementing a method for credentialing visitors to access-controlled environments, such as healthcare facilities, which indisputably is a common business practice.

The Federal Circuit has found claims similar to those in the '268 Patent ineligible for patent protection. In *Consumer 2.0 Inc. v. Tenant Turner, Inc.*, the Federal Circuit affirmed invalidity of claims describing a system that provided automated entry to a prospective buyer of properties as directed towards an ineligible abstract idea. *See Consumer 2.0 Inc. v. Tenant Turner, Inc.*, 796 Fed.Appx. 752 (Fed. Cir. 2020). The claims in *Consumer 2.0* disclosed a "method for providing automated entry to properties." *Consumer 2.0 Inc. v. Tenant Turner, Inc.*, 343 F.Supp. 3d 581, 584

9

(E.D.Va. 2018). The "property manager" would enter "a visitor name and contact information" (visitor credentials) into the system and provide a time when the visitor could tour a real estate property without requiring the agent to let the visitor into the property. *See id.* Thus, the patent described a method for automating the registration process when visiting a residential property and eliminating the need for an on-site representative of the property. *See id.* at 585. In finding the claims abstract at step one, the court in *Consumer 2.0* gave little weight to the generic computing devices and techniques claimed to provide automated entry to a property without human interaction, *see id.* at 588, noting that real estate agents have used lock boxes to provide real estate professionals access to properties for decades, and that the claimed invention "simply automates that process using generic computer components such as a server, technology-enabled lock box/automated door lock, application interface, and mobile device." *Id.*  The court followed prevailing Federal Circuit precedent in concluding that such automation of a routine human process is an abstract idea. *See id.*

Plaintiff's claims are strikingly similar to the claims in *Consumer 2.0* and are directed to the same abstract idea. Plaintiff's claims disclose a method of credentialing visitors to an access-controlled environment by an access administrator based on information that was previously provided to and approved by the access administrator (a person coordinating approvals). After the access administrator verifies the information, the access administrator may grant the visitor access to the facility. Similar to the claims in *Consumer 2.0*, which allow access to a residential property based on the location information provided through a mobile device, the '268 Patent claims use GPS technology for credentialing visitors' access to a facility. And just as the claimed invention in *Consumer 2.0* eliminated the need for a landlord or real estate agent to be present at a residential property to provide a potential buyer or renter access, the '268 Patent purportedly removes the

10

need for hospital employees to verify and grant visitors access to healthcare facilities. The '268 Patent's claims accordingly are "directed to a common method (automation) 'for solving an old problem' (the problem of how to provide an invited visitor entry to a property for a specified period of time)." *Id.* at 588. That abstract idea is patent ineligible under 35 U.S.C. § 101.

Similarly, in *ShoppersChoice.com,* the Federal Circuit analyzed claims disclosing an "automated notification system" "designed to communicate data" related to the location of an item out for delivery, to provide "advance notification of the pickup or delivery of a mobile thing." 958 F.3d at 1180. In analyzing the claims, the Federal Circuit noted that "monitoring the location of a mobile thing and notifying a party in advance of arrival of that mobile thing—amount to nothing more than the fundamental business practice of providing advance notification of the pickup or delivery of a mobile thing." *See id.* at 1181. The Federal Circuit explained that "business practices designed to advise customers of the status of delivery have existed for several decades, if not longer." *See id.* at 1181. The Federal Circuit found the claims directed to a patent ineligible abstract idea because the "process of recording authentication information—such as a customer's name, address, telephone number—and including that information in a subsequent communication with the customer is abstract not only because it is a longstanding commercial practice, but also because it amounts to nothing more than gathering, storing, and transmitting information." *Id.* at 1182 (citing *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (concluding claims relating to collecting, analyzing, and displaying information were directed to an abstract idea, even when limited to a particular content, because such limitation does not change its character as information)).

Like *ShoppersChoice.com*, the '268 Patent discloses a method to utilize a user's previously stored identification information and location status to grant access to a predefined area. Whereas

the claims in *ShoppersChoice.com* focused on the status of the delivery items, the claims in the '268 Patent are directed to credentialing status and location of visitors accessing healthcare facilities. Both try to claim a business activity that humans have been engaging in for decades, if not longer.

*Affinity Labs v. DIRECTV* also is instructive. There, the claims used location data communicated through networks to determine the status of an object or individual. The Federal Circuit found that claims directed to a system that allowed the user to obtain access to content when outside a particular broadcast signal were directed to the abstract idea of "providing out-of-region access to regional broadcast content." *Affinity Labs*, 838 F.3d at 1258. The Federal Circuit noted that "the practice of conveying regional content to out-of-region recipients has been employed by nearly every form of media that has a local distribution," *id.* at 1258, and that streaming content to a "cellphone" merely confined this abstract idea to a particular technological environment, which does not render the claims any less abstract. *See id.* at 1259.

Just as in *Affinity Labs*, in which the claims focused on tracking when a user's mobile device was outside a particular region when providing access to content, the '268 Patent claims allow a user to obtain access to credentialing information that can be sent to an electronic badge when the user and the user's mobile device is within a specific location. Claims directed to the abstract idea of allowing access to content within a particular location are not eligible for patenting.

> **3.**   **Step Two: Representative Claim 1 of the '268 Patent contains no inventive concept.**

In *Electric Power*, the Federal Circuit held that claims that do not require a new source or type of information, new techniques for analyzing information, an inventive set of components or methods, or any inventive programming do not establish an inventive concept. *See Electric Power Group*, 830 F.3d at 1355. The Federal Circuit also explained that the claims' invocation of

computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications. *See id.* at 1355 ("the claims at issue do not require nonconventional computer, network, or display components, or even a non-conventional and non-generic arrangement of known, conventional pieces, but merely call for performance of the claimed information collection, analysis, and display functions on a set of generic computer components and display devices."). In concluding that the claims did not establish an inventive concept, the Federal Circuit held that "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information" and that "nothing in the patent contains any suggestions that the displays needed for that purpose are anything but readily available." *Id.* at 1355.

Similarly, in *ChargePoint*, the Federal Circuit held that adding a communications network to a device is not an inventive concept. *See ChargePoint*, 920 F.3d at 774-775. In doing so, the Federal Circuit reasoned:

> the claims do nothing to improve how charging stations function; **instead, the claims merely add generic networking capabilities to those charging stations and say "apply it."** This is simply an "abstract-idea-based solution implemented with generic technical components in a conventional way." . . .
>
> From the claims and the specification, it is clear that network communication is the only possible inventive concept. Because this is the abstract idea itself, this cannot supply the inventive concept at step two. The claims are therefore ineligible. *Id.* at 774-775 (emphasis added and internal citations omitted).

Similar to the claims in *Electric Power* and *ChargePoint,* Claim 1 of the '268 Patent merely applies the applicant's desired credentialing concept using generic components in conventional ways, and therefore, does not contain any inventive concept to confer patent eligibility. Claim 1 of the '268 Patent recites components like a "smart-phone" and "electronic badge" that are being

13

used for their conventional purposes. '268 Patent at 3:65-4:2 ("the credentialing system utilizes GPS functionality already available in substantially all smart phones"); 4:39-42 ("either Apple, Inc. iOS based, or Android based" smart phones); 4:41-42. The claimed steps of "enrolling a visitor into the credentialing platform" are performed in the same way that hospital administrators have reviewed visitors' credentialing documents for decades, and therefore, are not unconventional or inventive. '268 Patent at 4:41-42 ("the administrator … approves or rejects the enrolling information"). In fact, the various steps in the claim have been done for decades by humans. *Id*. at 2:53-58 ("The step of approving, by the administrator, that the requirements of the step of enrolling are met, and the step of approving, by the administrator, the request for access at the at least one location, may include confirmation by a human that the requirements of the step of enrolling are met."); 3:5-11 ("the step of approving … may include approval by a human on the staff at the administrator"); 4:34-39 ("the step of approving **…** may include confirmation by a human on the staff at the administrator"); 4:61-62; 4:66-5:3.

There is nothing unconventional about visitors requesting access to locations and having their requests approved. '268 Patent at 1:13-24 ("in the past, … a visitor is typically received and processed by a receptionist that greets the visitor and provides him or her with a temporary badge"). Checking in to a location and recording a visitor's check-in time and date, using GPS technology, also is a routine step. '268 Patent at 3:67-4:2 ("the credentialing system utilizes GPS functionality already available in substantially all smart phones"). Additionally, badges have commonly been used to verify access to properties and to record the duration of the time a visitor is present at a property. '268 Patent at 1:10-12 ("it is common practice to issue identification badges to employees at facilities such as hospital or other healthcare facilities, office buildings, factories and the like"). The process of making changes to a badge to allow access to only certain

14

parts of a facility is also conventional. *See id.* Even having a badge update its display is not inventive, as the commercially available electronic badges described in the specification include rewritable displays. *See id*. at 5:56-67. Similarly, visitors regularly check out of properties when they leave a location and indicate the time they check out in hospital visitor records, such that a record exists for check-in/out time of a particular visitor. '268 Patent at 1:34-36 ("in the past, when such workers finished a job, the badge is surrendered or the badge is dated, so the person no longer may access the facility"). Because the claimed method does not describe an unconventional way of providing credentialing information for a visitor to enter an access-controlled environment and only uses generic components which carry out their normal functions, it does not establish an inventive concept and makes the '268 Patent ineligible for patent protection.

Claim 1 does not recite *any* unconventional components and fails to arrange or use the components in any unconventional way. Similar to the claims in *Electric Power* and *ChargePoint*, the '268 Patent's claims, understood in light of the specification, require nothing other than off-the-shelf, conventional computer, mobile device, network, and GPS technology for gathering information from the user, sending the information to an access administrator for verification, and having the human administrator use this information to allow a user to enter an access-controlled facility. Plaintiff utilizes these generic components according to their intended purposes. Thus, Plaintiff's claims fail to recite any inventive concept sufficient to render the claimed abstract idea patent eligible.

**4.    The remaining claims in the Plaintiff's patent are also abstract and do not contain an inventive concept.**

The remaining claims of the '268 Patent add additional limitations regarding the abstract idea, but none of these limitations confers patent eligibility. In addition, none of the remaining claims employ anything other than generic components and processes to achieve the functional

15

result of credentialing visitors to an access-controlled environment, a well-known human activity.

For example:

- Claim 2 recites that the request, approval, and check-in steps are during a "specific time interval;"

- Claim 3 recites that check-in requires an "electronic identifier" provided by the administrator that is used during a "specific time interval" to establish the check-in data;

- Claim 4 recites that the check-out step includes "detecting when the visitor departs the pre-defined area utilizing the visitor's geo-location;"

- Claim 5 recites that the check-out step includes "manually checking out by the visitor on the smart-phone using the credentialing platform;"

- Claim 6 recites that the enrolling step includes (a) "opening a smart phone application of the credentialing platform," (b) "opening a credentialing platform account by selecting a visitor username and password or biometric," and (c) "providing personal information" to the credentialing platform;

- Claim 7 depends from Claim 6, and recites that the step of enrolling includes "executing documents" and "uploading the executed documents to the credentialing platform;"

- Claim 8 recites that the step of "communicating between the smart-phone and the electronic badge includes communicating wirelessly;"

- Claim 9 depends from Claim 8 and recites that "the step of communicating between the smart-phone and the electronic badge includes communicating by near field communication (NFC);"

- Claim 10 recites that the step of approving "includes confirmation by a human that the requirements of the step of enrolling are met;"

- Claim 11 recites that the step of checking in "must occur within a specified distance from the at least one location;"

- Claim 12 recites that the step of checking in "must occur within a one mile radius from the at least one location;"

- Claim 13 recites that the step of checking out "occurs automatically by the credentialing platform after a pre-determined time period set by the administrator;"

- Claim 14 depends from Claim 13 and recites that "the pre-determined time period is eight hours;"

16

- Claim 15 recites that the step of requesting "is automatically denied by the credentialing platform upon the visitor reaching a predetermined number of visits to the at least one location;"

- Claim 16 recites that the step of approving "the request for the specific time interval is automatically revoked upon reaching a predetermined amount of time after the step of requesting access by the visitor is made;"

- Claim 17 recites that the step of approving "the request for access at the at least one location includes approval by a human on the staff of the administrator;"

- Claim 18 recites that the step of approving "the request for access at the at least one location includes computerized approval without human contact;"

- Claim 19 recites that "the step of displaying on the badge display indicia showing access by the visitor is authorized includes displaying a machine readable code;" and

- Claim 20 recites that "the electronic badge having a display utilizes a display using electronic paper display technology with low or no power requirements."

Because these dependent claims simply implement the abstract idea of credentialing visitors to an access-controlled environment using the same conventional components or techniques, the dependent claims also are invalid under § 101.

## IV.    CONCLUSION

IntelliCentrics respectfully requests that the Court dismiss this action with prejudice.

17

Dated:  August 18, 2020

Respectfully submitted,

/s/ Michael C. Wilson
Michael C. Wilson
Texas State Bar No. 21704590
mwilson@munckwilson.com
Chad J. Ray
Texas State Bar No. 24106754
cray@munckwilson.com
Sarika N. Patel
Texas State Bar No. 24073520
spatel@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
600 Banner Place Tower
12770 Coit Road
Dallas, TX 75251
(972) 628-3600

**ATTORNEYS FOR DEFENDANT
INTELLICENTRICS, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system on August 18, 2020.

/s/ Michael C. Wilson
Michael C. Wilson

849213

18