**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISON**

| | | |
|---|---|---|
| **REPIFI VENDOR LOGISTICS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-CV-00448** |
| | § | |
| **INTELLICENTRICS, INC. and INTELLICENTRICS GLOBAL HOLDINGS, LTD.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

---

**INTELLICENTRICS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS AND BRIEF IN SUPPORT**

---

**TABLE OF CONTENTS**

I. ARGUMENT ........ 1

A. The Section 101 Subject Matter Ineligibility Determination is Ripe ........ 1

1. The Court may rely on representative claims. ........ 1

2. No plausible fact issues have been identified ........ 2

B. *Alice* Step 1 ........ 3

1. The ’268 Patent concedes that its claims are directed to “a method for credentialing visitors to an access-controlled environment.” ........ 3

2. “Convenience” is not a technological improvement under § 101 ........ 5

C. *Alice* Step 2- Repifi’s claims do not disclose an inventive concept ........ 8

II. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................6

*Amdocs (Israel)Limited v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016)....................8

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....................2

*Berkheimer v. HP Inc.*,
890 F.3d 1369 (Fed. Cir. 2018)....................2

*Bilski v. Kappos*,
561 U.S. 593 (2010)....................1

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................9

*Consumer 2.0, Inc. v. Tenant Turner, Inc.*,
343 F. Supp. 3d 581 (E.D. Va 2018) ....................1, 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)....................1, 2

*Electric Power Group, LLC v. ALSTOM SA*,
830 F.3d 1350 (Fed. Cir. 2016)....................10

*Ericsson v. TCL Commc'n Tech. Holdings*,
955 F.3d 1317 (Fed. Cir. 2020 ....................5, 7

*SAP America, Inc. v. Investpic, LLC*
898 F.3d 1161 (Fed. Cir. 2018)....................10

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
414 F.Supp.3d 947 (Fed. Cir. 2019) ....................7

*Voxathon, LLC v. Alpine Electronics of America, Inc.*,
No. 2:15-cv-562-JRG, 2016 WL 260350 ....................5, 6

**Other Authorities**

Federal Rule 12(b)(6)....................1, 6

Although Repifi argues that factual disputes preclude a finding of patent ineligibility under Federal Rule 12(b)(6), Repifi relies on facts that are not stated in the Complaint or in the ’268 patent. In any event, Repifi’s Complaint expressly *concedes* that “[t]he ’268 Patent is directed to and claims a method of credentialing visitors to an access controlled environment,” which is an abstract idea similar to the focus of other patents invalidated by the Federal Circuit. D.I. 1 at ¶7. Because the controlling facts are admitted in the Complaint and ’268 Patent, there is no reason to delay dismissal.

The Federal Circuit’s decision in *Consumer 2.0* dictates the outcome here. There, the Federal Circuit held that an analogous “method for providing automated entry to properties” constitutes an unpatentable abstract idea. Because Repifi’s patent claims are not materially different from those in *Consumer 2.0*, the ‘268 Patent’s claimed method for “credentialing visitors to an access-controlled environment” also is ineligible under 35 U.S.C. § 101. Moreover, the patent itself shows that the ’268 Patent focuses not on any patentable technological solution to achieve its claimed result, but instead attempts to claim automation of human activity using existing, generic components to carry out purely functional steps that Repifi’s patent admits have long been part of credentialing visitors to an access-controlled environment. Thus, Repifi’s claims are invalid under § 101, and the Court should dismiss Repifi’s claims.

## I. ARGUMENT

### A. The Section 101 Subject Matter Ineligibility Determination is Ripe

#### 1. The Court may rely on representative claims.

Representative claims for a § 101 analysis must be “substantially similar and linked to the same abstract idea.” *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citing *Bilski v. Kappos*, 561 U.S. 593, 612 (2010)) (finding “four patents contain[ing] a total of 242 claims” invalid under § 101 based on two representative

claims and noting the district court "correctly determined that addressing each claim was unnecessary").

Here, claim 1 is the only independent claim and it comprises thirteen elements that are required by all the claims. '268 Patent at 6:54-7:29. Repifi argues that analysis of all dependent claims is required, Pl.'s Resp. at 8, but each dependent claim in the '268 Patent, including Claims 18 and 19, add only a minor and insignificant additional element. Regardless, every claim relates to the same abstract idea—credentialing visitors to an access-controlled environment. Def.'s Mot. at 15-17. Repifi fails to show that any dependent claim has a meaningfully different focus. Pl.'s Resp. at 8.

**2. No plausible fact issues have been identified**

Repifi argues that "the court must accept the pleaded factual allegations, including the attached patents, as true." Pl.'s Resp. at 5. But Repifi does not point to any well-pleaded facts that would prevent the Court from finding the claims of the asserted patent invalid under § 101. Importantly, not every § 101 determination contains genuine disputes over the underlying facts. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Where "the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." *See Berkheimer v. HP Inc.*, 890 F.3d 1369, 1370-71 (Fed. Cir. 2018). Thus, if the Complaint and patent provide the court a "full understanding of the basic character of the claimed subject matter," patent eligibility properly is resolved on the pleadings. *See Content Extraction*, 776 F.3d at 1349.

Repifi tries to avoid dismissal based on alleged factual disputes about whether a smart phone is a general purpose computer and whether an electronic badge has specialized features, making these components unconventional. Pl.'s Resp. at 6-7. However, the Complaint does not

plead these disputed facts and, more importantly, the ’268 Patent’s specification *concedes* that these components (including their operation) were well known and conventional components available prior to Repifi’s patent application. *See* ’268 Patent at 5:46-47 (method can be performed using existing “smart phones, including iPhones manufactured by Apple, Inc.”); 3:67-4:2 (“credentialing system utilizes GPS functionality **already present in substantially all smart phones**”), 4:39-42 (“step for enrolling may include opening a smart phone application . . .on a smart phone-typically either Apple, Inc. iOS based, or Android based”); 5:44-46 (“with respect to wireless communication . . . near field communication (NFC), **as is well known, may be used**”; 5:49-53 (“for smart phones lacking NFC write capability**, a commercially available NFC reader/writer may be used**”); 5:62-65 (“the display badge may be, for example, a battery-less smart card made by Aioi Systems Co, Ltd. . . having a black and white 2.9-inch e-Paper rewriteable display **that utilizes the ISO/IEC 18092 communication standard**”). Certainly, nothing in the patent suggests that Repifi invented (nor do the claims require) a specialized smart phone or particular electronic display badge. Thus, neither the patent nor the Complaint raises a factual issue on these points precluding dismissal.

## B. *Alice* Step 1

### 1. The ’268 Patent concedes that its claims are directed to “a method for credentialing visitors to an access-controlled environment.”

Repifi endeavors to rewrite the ’268 Patent and its Complaint, denying that the patent claims are directed to “a method for credentialing visitors to an access-controlled environment by an access administrator.” Pl.’s Resp. at 9. But this quoted language describing the ’268 Patent: (i) appears in the first sentence of the “Summary of the Invention” section of the ‘268 Patent (among other places); (ii) is stated as the preamble of each and every claim; and (iii) is pleaded verbatim in Repifi’s Complaint. *See* ’268 Patent at 1:56-58; Claims 1-20; D.I. 1 at ¶7; *see also* ’268 Patent

at 3:28-30, 35-42, 51-56; 6:34-36. Thus, Repifi cannot credibly argue that Intellicentrics oversimplifies the focus of Claim 1. Repifi itself made these admissions.

Ignoring the language in its Complaint, claims, and specification, Repifi attempts to re-characterize its claims as directed to "an authentication method utilizing a changeable electronic badge configured to be updateable in real time." *See, e.g.*, Pl.'s Resp. at 5, 9. But neither the claims nor the specification disclose or require making any changes to the electronic badge in "real time." For example, the claims and specification make it clear that the "preapproval" step is performed by an "administrator," similar to the method visitors used when interacting with employees at a receptionist desk when seeking entry to a property. '268 Patent at 4:62-66 ("The visitor also requests, via the credentialing platform, **a specific time interval** for visiting [] at least **one location**. The administrator then approves or requests for **the specific time interval**"); 5:7-12 ("**If the requests for access and for a time interval are approved by the administrator**, an electronic identifier is provided . . . to allow for access by the visitor to at least **one access location at the specific time interval**.")

Similarly, while the specification and claims (Claim 1, element (m)) describe that the badge display is modified after a visitor checks out of a facility, there is no requirement that the change occur in "real time" nor is the removal of indicia from the badge display linked to checking out. '268 Patent at 7:28-29; *see also* '268 Patent at 6:2-9 (After the visitor leaves a location "the **visitor may log out manually** via the smart phone application of the credentialing platform. Alternatively or additionally, visitor check out **may occur automatically by the credentialing platform after a pre-determined time period** (e.g. 8 hours) set by the administrator"). Indeed, because a visitor may manually check out after leaving an access controlled facility or wait for access to expire automatically after a predefined time period, the changes to the electronic badge are not required

to occur in "real time." A patent cannot be "directed to" features that are not even required by the claims. *Ericsson v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1327-1328 (Fed. Cir. 2020) ("Ericsson contends that its claims are not directed to an abstract idea because they 'solve the specific computer problem ... of controlling app access in resource-constrained mobile phones.' . . . We disagree. As an initial matter, the district court was incorrect to conclude that '[t]he claims of the '510 patent are limited to mobile platform technology,' and Ericsson is wrong to repeat that point. . . . The asserted claims merely require '[a] system for controlling access to a platform,' whether mobile, desktop, or otherwise. They do not mention, and are not limited to, mobile phones or a 'resource-constrained' environment. For the same reason, Ericsson's reference to 'a specific, layered software architecture,' . . . , which does not appear in the claims, is unavailing.") (internal citations omitted).

**2. "Convenience" is not a technological improvement under § 101.**

Repifi argues the claims are not abstract because the disclosed methods "improve over the old way of doing things" by "obviating the need for a receptionist," "eliminat[ing] the need for actual hardware at the hospital entrance, thus minimizing inconvenience and delay based on equipment failures," and "improving efficiency and safety by keeping updated records of visitors authorized for access." Pl.'s Resp. at 3-4. Even if that was true, those benefits are indistinguishable from improvements in many other patents found invalid under § 101. Critically, Repifi's claims do not improve the ways the computers/components operate, but merely employ them as tools to carry out an abstract idea—here, credentialing to an access-controlled environment. Courts repeatedly have found such "improvements" patent ineligible. For example, in *Voxathon*, the Eastern District of Texas concluded that claims directed to "a method and system for recovering calls" using an "improved" telephone set represent "routine tasks that could be performed by any

human" and failed to establish a technological improvement because they were "nothing more than the automation of responding to the sender of a message received on a telephone." *Voxathon, LLC v. Alpine Electronics of America, Inc.*, No. 2:15-cv-562-JRG, 2016 WL 260350 at *3-4 ("Whether a message is received through a telephone or a letter, the steps of receiving a message, identifying the sender of the message, remembering the address or phone number of the sender of the message, and responding to the sender of the message remain the same. . . Though Voxathon claims the '261 patent is directed toward or discloses a new device, that device merely performs the abstract idea of responding to the sender of a message."). As in *Voxathon*, the method steps in the '268 patent merely automate activities previously performed by humans and are not a technological improvement eligible for patenting.

The '268 Patent also is substantially similar to those held invalid in *Consumer 2.0, ShoppersChoice.com,* and *Affinity Labs*.[1] In *Consumer 2.0*, the Federal Circuit affirmed dismissal under Rule 12 of analogous claims that (i) provided remote authorization for access to a location, (ii) provided automated/digital means for such access (in *Consumer 2.0*, a "code"; in the '268 Patent, badge "indicia"), and (iii) tracked or recorded visitor data. *See Consumer 2.0, Inc. v. Tenant Turner, Inc.*, 343 F. Supp. 3d 581, 584-585, 590, 594 (E.D. Va. 2018). Because there is no meaningful distinction between the focus of the claims of *Consumer 2.0* and those in the '268 Patent, dismissal is warranted. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014) ("It is enough to recognize that there is no meaningful distinction between the concept of risk hedging in *Bilski* and the concept of intermediated settlement at issue here.").

Repifi argues that its claims are similar to those found patent eligible in *USAA*. Pl.'s Resp. at 11. In *USAA*, the Federal Circuit found a technological improvement in a system and method

[1] Repifi's response failed to contest Defendant's analysis of *Shopperchoice.com* and *Affinity Labs*.

for detecting check features in images—a technological problem distinct from automation of preexisting human activities. *See United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, 414 F.Supp.3d 947, 957 (Fed. Cir. 2019) (the improvement being claimed is "the use of objective monitoring criteria to improve the acceptability of the check image captured in reliance on the subjective determinations of a user.") In concluding that the patent claimed a technological improvement, the Federal Circuit noted that the patent's preimage monitoring steps solved a technical problem that reduced the number of non-conforming check images being deposited. *See id.* ("It is the use of these objective monitoring criteria, not the use of a generic computer that improved the existing technological process.") Unlike the method and system disclosed in *USAA*, the '268 Patent does not purport to improve the phones, computers, or electronic badges used to carry out the steps of the disclosed method. The '268 Patent simply uses existing technology to implement what the '268 Patent admits are commonly-used credentialing steps.

Repifi again contends that the "claimed electronic badge has real time functionality" that "enables the system to monitor visitor compliance with specific administrator requirements and display it in real time as a badge wearer maneuvers a facility, in a way human beings cannot do." Pl.'s Resp. at 11. However, as discussed above, "real time" functionality is not discussed anywhere in the '268 Patent, *nor is it claimed*. A patentee cannot defeat ineligibility based on technological improvements that are not even part of the asserted patent claims. *Ericsson*, 955 F.3d at 1327-1328. And unlike the steps being performed by *USAA's* method and system, the '268 Patent is directed to credentialing steps that the specification admits humans are capable of performing. *See, e.g.*, '268 Patent at 1:22-29. Indeed, there is no dispute humans are capable of confirming a visitor is authorized to access a particular location, issuing an authorization badge, and accurately recording when a visitor enters/exits a facility. *See* Def. Mot. at 12-15.

In attempting to establish a technological improvement, Repifi argues that the claim provide "improvements to the operation of a computer device, including to its speed and efficiency." Pl.'s Resp. at 13; *see also* Pl.'s Resp. at 4 ("electronic communication between the electronic badge and smart phone improves processing speed and efficiency by eliminating separate logging in of visitor data"). However, there is a difference between Repifi's ineligible abstract idea-based solution implemented with generic technical components in a conventional way and an eligible technology-based solution that improves the performance of the computer system itself. *See Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1297-1299 (Fed. Cir. 2016). Unlike patents found to improve computer or other systems, the '268 Patent does not purport to improve computers or electronic badge technology. It merely claims a method using computers, mobile devices, and electronic badges to carry out functional steps. *See* '268 Patent at 6:54-7:29. Therefore, Repifi's claims are directed to an abstract idea under Step 1.

### C. *Alice* Step 2- Repifi's claims do not disclose an inventive concept

Repifi argues that the claimed components are not conventional because (1) a smart phone is not a general purpose computer and (2) that the electronic badge is not readily available. Pl.'s Resp. at 6-8. However, Repifi concedes that a smart phone and a computer have "similarities." Pl.'s Resp. at 6. And like the phones found conventional by the Federal Circuit in *Affinity Labs*, the smart phones that Repifi references in its claims and specification are conventional and commercially available. *See* '268 Patent at 4:41-42.

The electronic badge used in Repifi's system also is commercially available and not invented or modified by Repifi. *See* '268 Patent at 5:62-64. Repifi cites the specification language stating "currently available display badges may not be capable of communicating directly with smart phones lacking NFC write capability" to suggest "that standard, garden-variety badges are not fit for the claimed method." Pl.'s Resp. at 7-8. However, the specification discusses how

commercially available NFC readers/writers can be used to allow the necessary communication between smart phones and display badges lacking this technology. '268 Patent at 5:49-51. And in any event, the claims do not even require phones with NFC write capability (or any other special features). The claims merely require a "smart phone based credentialing platform having global positioning system (GPS) capability." *See, e.g.*, '268 Patent at 6:57-58.

To distinguish *ChargePoint*, Repifi argues that its claims are "distinctly different, not directed to, and do not claim networking." Pl.'s Resp. at 17. Repifi misses the point. The Court found the *ChargePoint* patent ineligible because it was directed to the abstract idea of using a generic communication network to control vehicle charging stations. In so holding, the Court noted that the patent "never suggests that the charging station itself is improved from a technical perspective" or that "the invention involved overcoming some sort of technical difficulty." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019). The same is true here. There is no dispute that Repifi did not invent or improve the phones or electronic badges used in its method. While Repifi argues that "the electronic badge is **not** being used in a 'standard way' but is specially adapted to change in real time to reflect visitor compliance with the administrator's requirements based on the visitor's movements," Pl. Resp. at 17, Repifi never explains how Repifi's patent "specially adapt[s]" the commercially available electronic badge or points to any claim language requesting any special technological adaptation to that commercially available badges.

Repifi also argues that its claims do more "than gather, send, and present desired information" because the claims disclose "an inventive new way for displaying information by the electronic badge, changing that display based on a visitor's movements and meeting the administrator's specific requirements." Pl. Resp. at 17-18. But Repifi's claims require no improved

*components*; rather, they use available components with acknowledged preexisting functionality as tools in executing the claimed method. Despite Repifi's argument that *Electric Power's* claims "were much different," Repifi's claims disclose functional activity that the Federal Circuit in *Electric Power* concluded did not establish an inventive concept. *See Electric Power Group, LLC v. ALSTOM SA*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("such invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea.") "[P]atent law does not protect such claims, without more, no matter how groundbreaking the advance." *SAP America, Inc. v. Investpic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018). In the end, Repifi's disclosed method uses commercially available badges and components, connected to a telecommunications network similar to the conventional components used in *ChargePoint* that "added nothing more." Def. Mot. at 13-14. Thus, the '268 Patent is not patent eligible.

## II. CONCLUSION

For the reasons stated above, and in Intellicentrics' motion, Intellicentrics respectfully requests that the Court dismiss this action with prejudice.

Dated: September 15, 2020

Respectfully submitted,

*/s/ Michael C. Wilson*

Michael C. Wilson
Texas State Bar No. 21704590
mwilson@munckwilson.com
Chad J. Ray
Texas State Bar No. 24106754
cray@munckwilson.com
Sarika N. Patel
Texas State Bar No. 24073520
spatel@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
600 Banner Place Tower
12770 Coit Road
Dallas, TX 75251
(972) 628-3600

**ATTORNEYS FOR DEFENDANT INTELLICENTRICS, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system on September 15, 2020.

*/s/ Michael C. Wilson*
Michael C. Wilson

857101